```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ROBERTA DUPRE,                          :   11 Civ. 4454 (DLC)
                       Petitioner,      :   04 Cr. 267-01 (DLC)
                                        :
            -v-                         :   MEMORANDUM OPINION
                                        :        & ORDER
UNITED STATES OF AMERICA,               :
                                        :
                       Respondent.      :
                                        :
----------------------------------------X
```

APPEARANCES:

For Petitioner:

Roberta Dupre, pro se
No. 55989-054
Federal Medical Center-Carswell
P.O. Box 27137
Fort Worth, TX 76127


For Respondent:

Robin W. Morey
United States Attorney's Office
One St. Andrew's Plaza
New York, NY 10007


DENISE COTE, District Judge:

    On June 23, 2011, Roberta Dupre ("Dupre") filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.  Dupre was convicted following a jury trial in October 2004 of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 and conspiracy to commit wire fraud in violation of 18 U.S.C. § 371.  Dupre presses one argument in her petition: that her conviction

must be vacated in light of the Supreme Court's subsequent decision in <u>Skilling v. United States</u>, 130 S.Ct. 2896 (2010). For the following reasons, Dupre's petition is denied.

BACKGROUND

On October 20, 2004, a jury convicted Dupre and her co-defendant of one count each of wire fraud and conspiracy to commit wire fraud. The Government demonstrated at trial that Dupre had defrauded investors of more than $1 million dollars over an approximately ten-year period beginning in 1994 through an "advance fee" swindle. Dupre represented to investors that she was working to release frozen assets held at one time by the family of the former Philippines president Ferdinand Marcos. Dupre advised investors that she was working with partners in the Philippines who were members of the Marcos family. She represented to investors that for every $1,000 contributed, Citibank in New York would pay the investor $500,000 when the assets were unfrozen, as well as an additional $500,000 to the person who had referred the investor. Dupre made extensive personal use of the "invested" funds. Many of Dupre's communications to the victims of her fraud appealed to their religious faith and explicitly evoked religious imagery and symbolism.

At trial, the Government presented overwhelming evidence of the defendants' guilt including, inter alia: (1) testimony of victims and messages sent by the defendants to their victims, (2) testimony of an undercover FBI agent who had posed as a potential investor and recordings of the agent's conversations with the defendants, and (3) records of wire transfers and bank deposits and withdrawals.

Dupre appealed her conviction.  The Court of Appeals affirmed the conviction but vacated her sentence.  See 462 F.3d 131 (2d Cir. 2006).  Dupre was resentenced on December 15, 2006, principally to a term of 135 months' imprisonment.  That sentence was affirmed on October 7, 2008.  See 296 Fed. Appx. 113 (2d Cir. 2008).

Dupre's § 2255 petition was filed on June 23, 2011.  The Government opposed on September 13.  Dupre filed a reply brief on October 13.

DISCUSSION

Dupre argues that her conviction must be vacated in light of the Supreme Court's decision in Skilling in 2010, which adopted a limiting construction of the "honest services"

provision of the wire fraud statute, 18 U.S.C. § 1346.  See 130 S.Ct. at 2928.[1]

> Title 18 U.S.C. § 1343, the wire fraud statute, provides:
>
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.  Section 1346, the honest services statute, provides that for purposes of § 1343 (as well as the mail fraud statute, 18 U.S.C. § 1341) "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.

In Skilling, the Supreme Court distinguished classic fraudulent schemes, involving the deprivation of the victim's money or property, from honest services fraud schemes:  "Unlike fraud in which the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other,

---

[1] Dupre's petition appears to be timely.  Section 2255's one-year limitations period runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).  "[D]ecisions that narrow the scope of a criminal statute by interpreting its terms" generally apply retroactively on collateral review.  Schriro v. Summerlin, 542 U.S. 348, 351 (2004).  The Supreme Court decided Skilling on June 24, 2010.  Dupre filed her petition on June 23, 2011.

4

the honest-services theory targeted corruption that lacked similar symmetry." 130 S.Ct. at 2926 (citation omitted). In an honest services fraud scheme, "[w]hile the offender profited, the betrayed party suffered no deprivation of money or property; instead, a third party, who had not been deceived, provided the enrichment." Id. The Court in Skilling avoided due process vagueness concerns over the phrase "right of honest services" by construing § 1346 as limited to "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." Id. at 2928. See also United States v. Coppola, 671 F.3d 220, 234 (2d Cir. 2012).

Dupre's challenge to her conviction based upon Skilling is meritless. Dupre was not convicted of honest services fraud or charged under § 1346. Rather, she was convicted of participating in a conventional fraud scheme, in which she lied to her victims to convince them to give her their money. Dupre's fraud was one in which, as the Supreme Court put it, "the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other". 130 S.Ct. at 2926. Dupre's conduct fell squarely within the ambit of § 1343, which criminalizes "obtaining money or property by means of false or fraudulent pretenses, representations, or promises".

In her reply, Dupre acknowledges that she was not convicted under § 1346 and that the Government did not seek to hold her

5

liable under an honest services fraud theory.  Dupre argues, however, that because the phrase "scheme or artifice to defraud" in the wire fraud statute was expanded by § 1346 to include schemes "to deprive another of the intangible right to honest services", her conviction under the wire fraud statute raises vagueness concerns.

To the extent Dupre seeks to challenge the wire fraud statute itself as unconstitutionally vague, that argument is foreclosed by clear precedent.  The mail and wire fraud statutes "clearly protect[] property rights[.]"  <u>United States v. Rybicki</u>, 354 F.3d 124, 134 (2d Cir. 2003) (en banc) (citation omitted); <u>see</u> <u>also</u> <u>McNally v. United States</u>, 483 U.S. 350, 356 (1987).

Dupre's argument that she may have been convicted upon an impermissible honest services fraud theory because the jury was instructed on the elements of wire fraud, including the meaning of "scheme or artifice to defraud", likewise fails.  The Court instructed the jury that "a scheme or artifice to defraud is any plan, device or course of action <u>to obtain money or property</u> by means of false or fraudulent pretenses, representations or promises."  (Emphasis added).  The jury was further instructed that it could "only find a scheme to defraud existed if the [G]overnment has proven beyond a reasonable doubt the existence of the particular scheme charged in the indictment."  The

indictment charged Dupre and Stambaugh with a scheme to defraud investors out of advance fees.

United States v. Redzic, 569 F.3d 841 (8th Cir. 2009), cited by Dupre, is easily distinguishable.  In Redzic, the defendant, an owner of a drivers' training school, bribed the director of a state-licensed third-party tester to issue his students commercial drivers' licenses.  Id. at 843-44.  The defendant was indicted and convicted under the mail and wire fraud statutes, §§ 1341 and 1343, but not under § 1346.  Id. at 844.  The court held that the act of fraudulently obtaining a license from a state agency did not constitute a "deprivation of property" for purposes of §§ 1341 and 1343, but that the indictment provided clear notice of the basis for holding the defendant liable for honest services fraud under § 1346.  Id. at 846-47.  The court found, moreover, that the charge to the jury on the elements of mail and wire fraud permitted the jury to hold the defendant liable under an honest services fraud theory. Id. at 847.[2]

Here, by contrast, the indictment described and evidence at trial demonstrated a fraudulent scheme by the defendants to

---

[2] The Supreme Court vacated and remanded in light of Skilling. 130 S.Ct. 3543 (2010).  On remand, the Eighth Circuit again affirmed the defendant's conviction, finding that he had been convicted under an honest services fraud theory that remained viable post-Skilling.  United States v. Redzic, 627 F.3d 683, 685 (8th Cir. 2010).

deprive victims of property in the form of money.[3]  The Court instructed the jury that to convict the defendants, it must find that scheme proven.  Unlike in Redzic, there is no question that Dupre could be convicted of the scheme charged in the indictment under § 1343 without reference to § 1346 or any theory of honest services fraud.

CONCLUSION

Dupre's petition for a writ of habeas corpus is denied.  In addition, the Court declines to issue a certificate of appealability.  Dupre has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted.  Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).  The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk of Court shall dismiss this petition and close the case.

SO ORDERED:

Dated:     New York, New York
           July 20, 2012

                                   _____
                                            DENISE COTE
                                   United States District Judge

---

[3] As the Government put it in its closing argument, the defendants "used [their victims] like their private ATM machine."

COPIES MAILED TO:

Roberta Dupre
No. 55989-054
Federal Medical Center-Carswell
P.O. Box 27137
Fort Worth, TX 76127